IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 2, 2004

**STATE OF TENNESSEE v. JON GLEN AKINS**

**Direct Appeal from the Circuit Court for Obion County**
**No. 4-15      William B. Acree, Jr., Judge**

---

**No. W2004-01140-CCA-R3-CD  - Filed December 8, 2004**

---

The Defendant, Jon Glen Akins, pled guilty to one count of theft of property valued between $10,000.00 and $60,000.00, a class C felony.  The trial court sentenced the Defendant to three years, ordering that the Defendant serve 90 days in jail, followed by probation.  The Defendant appeals, contending that the trial court erred by not granting him full probation.  Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and J.C. MCLIN, JJ., joined.

Joseph P. Atnip, Dresden, Tennessee, for the appellant, Jon Glen Akins.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and Kevin McAlpin and James T. Cannon, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**
**I.  Facts**

This case arises out of the Defendant's conviction for theft of property valued between $10,000.00 and $60,000.00, a class C felony.  In February of 2004, an Obion County Grand Jury indicted the Defendant for this offense, and the Defendant pled guilty on March 12, 2004.  At the guilty plea hearing, the State told the trial court that, had the case gone to trial, the evidence would have shown that, between January 28, 2002 and September 23, 2003, the Defendant was employed by Williams Sausage Company, as a delivery man.  Further, the State said that, comparing the reports that the Defendant turned in to the Williams Sausage Company with the merchandise that he turned into the company, there was a discrepancy of $17,867.55.

At the Defendant's sentencing hearing, the following occurred.  Roger Williams testified that he was currently the president of Williams Sausage Company and that his company employed the

Defendant for approximately six and a half years. He said that between, January 28, 2002 and September 23, 2003, the Defendant was a "route salesman." Williams testified that Williams Sausage Company would ship product to the Defendant and the Defendant would take responsibility for this product and then would sell it, and then the Defendant would deliver it to grocery stores and restaurants. Williams said that his sales manager began noticing "inordinate amount of credits written" on the Defendant's invoices and began investigating. He said that the manager discovered that the Defendant was altering the invoices after giving them to his customers. The invoices would say that the Defendant was giving the customer a monetary credit for returned product or for some other reason, but the Defendant would not actually give that monetary credit to the store, but would instead keep the money for himself.

Williams said that he and his company attempted to determine how much money the Defendant had taken by requesting that the Defendant's customers send the company their copies of the invoices and then comparing those invoices with the ones that the Defendant submitted. Based upon this discrepancy, Williams said that the company terminated the Defendant and inventoried his truck. He testified that the Defendant's truck "came up quite a bit short, too. In other words, he had probably sold product [and] . . . kept the money." Williams testified that he calculated the amount that the Defendant had stolen "a little over $17,000.00."

Jay Horton testified that he has known the Defendant for approximately one year, and he was currently employed with the Defendant. He said that the Defendant is the "best neighbor I've ever been around" and that he is also a good co-worker. He said that the Defendant has children and he is a loving father that cares about his kids and spends a lot of time with them. He testified that the Defendant's children do not have a mother so the Defendant is a father and mother to his children. Horton said that the Defendant is "a good person."

Barbara Tappen testified that she has known the Defendant for eight to ten years. She said that the Defendant's wife "left" over a year ago and that the Defendant has been taking care of his kids and his house all by himself. She testified that the Defendant is good with his children and he is patient and his children are respectful. Tappen testified that the Defendant works every day and never misses a day.

David Russell testified that the Defendant is his wife's uncle. Russell testified that he lived beside the Defendant for approximately three years, and the Defendant helped him and his wife buy a home. Russell testified that the Defendant's daughter babysits for his daughter, and the Defendant is a devoted father.

Melba Goins testified that she is the Defendant's mother and that he is good with his children. She said that the Defendant's wife "went on the wild side" and left. She said that the Defendant gave her and her other children a place to live when they did not have one.

The Defendant testified that he was currently employed by a timber company in Mississippi. He said that he has a sixteen-year-old daughter, a thirteen-year-old son, a ten-year-old daughter and a four-year-old daughter. The Defendant said that his wife left him on February 14, 2003, to go "live with her drug dealer." He said that, before she moved out, she "successfully siphoned off . .

. pretty much everything we owned." He said that she took his bank accounts, credit cards, and any money he had in the house. The Defendant testified that, two weeks after his wife left, he started getting late notices that the phone and cable were going to be turned off. The Defendant said that, many days, he considered "cashing it in and calling it a day, but [his] children kept [him] going and gave [him] a reason to keep on." He said that what he did was completely wrong, but the children had to eat and had to have clothes and shelter. He said they had to have things to make up for their mother being gone. The Defendant said that he is trying to pay the company back by refinancing his house, but he has not yet been able to do so.

The Defendant told the court that his children were his main concern, one of whom had debilitating arthritis in her knees and ankles. The Defendant reiterated that he made a terrible mistake and that he "let an emotional situation overcome [his] better judgment." The Defendant said that he would earn, on average, approximately $400 a week working for Williams Sausage Company. On cross-examination, the Defendant admitted that he began stealing from the company prior to his wife leaving, but explained that he did so to cover up for her drug problem.

The trial court then stated:

In imposing a sentence upon the [D]efendant, the Court considers many things. The Court considers the evidence in this record, including the evidence at the guilty plea, the evidence presented today, the Pre-Sentence Report, testimony of the witnesses, the testimony in particular of [the Defendant], the Victim Impact Statement, the argument of counsel, the attorneys, and also the principles of sentencing.

The court finds that [the Defendant] is a Range I standard offender. There is one mitigating factor which applies. No. 1, the defendant's criminal conduct neither caused nor threatened serious bodily injury. But there is one enhancing factor which also applies, the [D]efendant abused a position of private trust. In this regard, [the Defendant] was charged in his job of delivering product to customers and collecting the money. There was a great deal of faith put in him. He abused that trust over a period of many months. Thus, there is one mitigating factor and one enhancing factor, which makes [the Defendant] a Range I standard offender.

The Court looks to T.C.A. 40-35-102, and finds these principles apply. Every defendant shall be punished by a sentence justly deserved in relation to the seriousness of the offense. Secondly, this chapter is to assure fair and consistent treatment of all defendants by eliminating unjustified disparity in sentencing and providing a fair sense of predictability to the criminal law and its sanctions. And 3(a), punishment shall be imposed to prevent crime and promote respect for the law by providing an effective general deterrence for those likely to violate the criminal laws of the State.

The Court finds there is a need for deterrence in this case because theft is a very serious offense in this jurisdiction in that there are a great many crimes of theft and related-type offenses which are committed. Also, the [D]efendant's crime was

the result of intentional conduct motivated by a desire to profit or gain from criminal behavior.

The Court will note that [the Defendant] attempts to place a considerable part of the blame upon his wife. His testimony was that she left on February 23rd of last year, but that the crimes that he committed occurred for more than one year before she left.

[The Defendant] is presumed to be a . . . favorable candidate for alternative sentencing. He has been convicted of a [c]lass C felony. He is a Range I offender. The Court looks at the sentencing considerations in 40-35-103 to determine whether or not any evidence has been presented by the State to rebut that presumption. The Court finds that some evidence has been, in that confinement or some confinement is necessary to provide an effective deterrent to others likely to commit similar offenses.

There are several factors. The [D]efendant asks for alternative sentencing, and there are several factors that the Court looks at. The nature and circumstances of the criminal conduct involved, this is a strike against [the Defendant]. He committed many acts of crime. This covered a long period of time. And I think there's some difference. If you were to walk into Wal-Mart and pick up one item and steal that and carry that out and then never do that again; on the other hand, I don't know how many different criminal acts you did, but you had criminal intent for a period of many months, well over one year, and on numerous occasions, you stole from your employer.

The second fact that the Court looks at is the [D]efendant's potential or lack of potential for rehabilitation, including the risk that during the period of probation, the [D]efendant will commit another crime. This is a factor in your favor. The Court finds there is a potential for rehabilitation. And from the testimony of you and your witnesses, I don't think that it is particularly likely that you will commit this crime again.

Next, we look at whether a sentence of full probation would unduly depreciate the seriousness of the offense. The Court is concerned that it is. Again, you stole money on many occasions over a long period of time.

And finally, whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes. The Court finds there is need for deterrence in this case.

The presumptive sentence in this case is three years. There's one enhancing factor which would increase that, but there's one mitigating factor which would reduce that. So the sentence shall be three years.

-4-

Taking into account all the criteria I've just announced, also taking into account the attitude of your employer, Mr. Williams, the Court is going to grant some alternative sentencing. I'm going to sentence you to three years, to be served in the Tennessee Department of Correction. That time shall be suspended except for 90 days, which you shall serve. You shall receive credit for one day previously served.

The Defendant appeals the judgment of the trial court, asserting that the trial court erred by not granting him full probation.

## II. Analysis

When a defendant challenges the length or manner of service of a sentence, it is the duty of this Court to conduct a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "'conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001) (quoting State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999)); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or statutory enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Cmts. Moreover, the record must reflect that the court has weighed all of the factors in reaching its determination. State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993) (citing State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989)). The court must explain on the record why the defendant does not qualify under its analysis, and, if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others. Id.

In the case under submission, we conclude that there is ample evidence that the trial court considered the sentencing principles and all relevant facts and circumstances. Therefore, we review its decision de novo with a presumption of correctness. Accordingly, so long as the trial court complied with the purposes and procedures of the 1989 Sentencing Act and its findings are supported by the factual record, this Court may not disturb this sentence even if we would have preferred a different result. See Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Cmts; State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). We note that the defendant bears the burden of showing that the sentence is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; Ashby, 823 S.W.2d at 169.

We now turn to decide whether the Defendant in the case under submission has proven that his sentence, which included 90 days of incarceration, was improper. A defendant is eligible for alternative sentencing if the sentence actually imposed is eight years or less. Tenn. Code Ann. § 40-35-303(a) (2003). A defendant who is an especially mitigated or standard offender convicted of a class C felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(b)(6) (2003). In determining whether to grant or deny probation, the trial court may consider the following: the circumstances of the offense; the defendant's criminal record; background and social history; the defendant's physical and mental health; the deterrent effect on other criminal activity; and the likelihood that probation is in the best interests of both the public and the defendant. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). A defendant bears the burden of establishing suitability for probation. Tenn. Code Ann. § 40-35-303(b); Ashby, 823 S.W.2d at 169.

Tennessee Code Annotated section 40-35-103(1) (2003) states that:

Sentences involving confinement should be based on the following considerations: (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct; (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed. . . ." Tenn. Code Ann. § 40-35-103(5). The trial court may consider enhancing and mitigating factors when determining a defendant's sentence. Tenn. Code Ann. §§ 40-35-114, -113 (2003).

In sentencing a defendant, the presumptive sentence for a defendant convicted of a Class C, felony shall be the minimum sentence in the range if no enhancing or mitigating factors are present. Tenn. Code Ann. § 40-35-210(c). When such factors are present, "the court must start at the minimum sentence in the range, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors." Tenn. Code Ann. § 40-35-210(e).

In the case under submission, the Defendant contends that the trial court erred when it denied him full probation because: the trial court improperly applied one enhancement factor; confinement is not necessary to protect society; confinement is not necessary to avoid depreciating the seriousness of these offenses; and the record does not indicate that measures less restrictive than confinement have been frequently or recently applied unsuccessfully to him. The Defendant asserts that, pursuant to Blakely v. Washintgon, 542 U.S. ___, 124 S. Ct. 2531 (2004), the one enhancement factor that the trial court found applicable was improperly applied. The Defendant is correct in this regard, however, the trial court sentenced the Defendant to the presumptive minimum sentence. Further, the trial court did not base its decision to deny the Defendant full probation on the enhancement factor

that it found applicable, but, rather, it cited multiple other reasons in the record. Therefore, any <u>Blakely</u> error is clearly harmless beyond a reasonable doubt.

When sentencing the Defendant, the trial court noted the presumption in favor of alternative sentencing for the Defendant, and then the trial court determined that the State rebutted this presumption pursuant to Tennessee Code Annotated section 40-35-103. The trial court found that "some evidence" was presented that "some confinement is necessary to provide an effective deterrent to others likely to commit similar offenses." Further, the trial court found that the nature and circumstances of the Defendant's offense were such that some incarceration was necessary. The trial court noted that the Defendant had a criminal intent to steal over a period of over a year and that, on numerous occasions, he stole from his employer. The trial court also found that the Defendant's potential for rehabilitation was a factor in his favor, but then found that a sentence of full probation would depreciate the seriousness of his offense. Additionally, the trial court found that there was a need for deterrence in this case. We conclude that the evidence in the record does not preponderate against these findings of the trial court, and we, therefore, affirm the trial court's judgment.

## III.  Conclusion

In accordance with the foregoing, we conclude the trial court committed no reversible error when it denied the Defendant's request for full probation. Therefore, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE